UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPI INTERNATIONAL, LTD, <br>     Plaintiff, <br>   v. <br> ANGA SUPPLY, LLC, <br>     Defendant. | Case No. 13-cv-04888-HSG <br><br> **ORDER TO SHOW CAUSE** |

Plaintiff Alpi International, Ltd. ("Alpi") produces and sells soft foam and molded plastic toys known as "stress relievers." These squeezable toys come in a variety of shapes, and can be branded with corporate or other logos. Defendant Anga Supply, LLC ("Anga") is a direct competitor in the same business. Alpi alleges that eighteen of Anga's products infringe its copyrighted designs. Anga has moved for summary judgment on Alpi's claims, arguing: (1) that its products do not infringe as a matter of law; and (2) that Alpi has offered no evidence that the designers of Anga's toys had access to Alpi's designs prior to their creation. *See* Dkt. No. 46.

The Court has carefully considered the arguments and evidence offered by the parties, both in their written submissions to the Court and during the hearing on April 9, 2015. For the reasons discussed below, the Court **ORDERS** both Alpi and Anga to show cause why the copyrighted works they allege to be infringed in this case share protectable elements with the allegedly infringing works.

I.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a

1  material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for
2  the nonmoving party." *See id*. "[I]n ruling on a motion for summary judgment, the judge must
3  view the evidence presented through the prism of the substantive evidentiary burden." *Id*. at 254.
4  The question is "whether a jury could reasonably find either that the [moving party] proved his
5  case by the quality and quantity of evidence required by the governing law or that he did not." *Id*.
6  "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor." *See United Steelworkers*
7  *of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citation omitted).

The moving party must inform the district court of the basis for its motion and identify
those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if
any, that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing motion for summary judgment
"may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth
specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *see also
Liberty Lobby*, 477 U.S. at 250. The opposing party need not show the issue will be resolved
conclusively in its favor. *See id*. at 248-49. All that is necessary is submission of sufficient
evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the
parties' differing versions at trial. *See id*.

**II.   DISCUSSION**

    **A.   Infringement of Alpi's Designs**

        **i.   Legal Standard for Establishing Copyright Infringement**

"To distinguish between permissible lifting of ideas and impermissible copying of
expression, [the Ninth Circuit has] developed a two-part 'extrinsic/intrinsic' test." *Mattel, Inc. v.
MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21,
2010) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)). At
the initial "extrinsic" stage, the court examines the similarities between the copyrighted and
challenged works, determines whether shared elements are protectable, and identifies the standard
to be applied at the intrinsic stage. *Id*. "For example, ideas, scenes a faire (standard features) and
unoriginal components are not protectable" and thus cannot form the basis of an infringement

2

claim. *Id*. When the unprotectable elements are "filtered out," what remains is the author's protectable expression. *Id*. The Court then determines what standard will apply at the intrinsic stage based the breadth of possible expression. "If there's a wide range of expression . . . then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *See id*. at 913-14 (citation omitted). In contrast, subjects that permit only a narrow range of expression warrant "thin" copyright protection, whereby a challenged work must be "virtually identical" to infringe. *Id*. (citations omitted).

If the allegedly infringing work and the copyrighted work share common protectable elements, the finder of fact (usually a jury) is asked to apply the standard for infringement determined by the Court during the extrinsic stage—either substantially similar or virtually identical, respectively—at the intrinsic stage. The intrinsic inquiry "examines an ordinary person's subjective impressions of the similarities between two works, [and] is exclusively the province of the jury." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1077 (9th Cir. 2006) (citation omitted). However, a finding of similarity between two works "can't be based on similarities in unprotectable elements." *Mattel*, 616 F.3d at 916. "When works of art share an idea, they'll often be 'similar' in the layman's sense of the term . . . . The key question always is: Are the works substantially similar beyond the fact that they depict the same idea." *Id*. at 917.

### ii. Protectable Elements of Alpi's Designs

In this case, the Court's analysis is stymied as soon as it begins. Alpi's Opposition did not identify any feature in its eighteen asserted designs that constitute an "original" element warranting even "thin" copyright protection. *See* Alpi Opp. at 1-4. Nor did Alpi identify any combination of unoriginal components that, when taken as a whole, "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811. Instead, Alpi rests its entire opposition to Anga's motion for summary judgment on the conclusory assertion that "the similarities between [Alpi's] copyrighted works and [Anga's] accused products far outweigh any differences." Alpi Opp. at 2. In other words, Alpi does not engage, at all, with the relevant standard.

Alpi's failure stands in stark contrast to the showings made by plaintiffs pursuing infringement claims in this and other districts. *See Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077-78 (9th Cir. 2006) (plaintiff alleging infringement of television series identified similar plot points and characters); *Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*, No. C 10-1094 SBA, 2010 WL 3790656, at *6 (N.D. Cal. Sept. 27, 2010) (noting artist's "specific use and style of shading on the duck bill" of stylized duck images shown in a variety of poses and perspectives); *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1135 (C.D. Cal. 2009) (plaintiff alleging infringement of plush animal toys identified "large, round eyes, with large black pupils and colored borders . . . . placed close together on the front of each character's face," and "recognizable stitching patterns, expressions, and color elements" as distinctive features warranting copyright protection). Under similar circumstances, the Ninth Circuit has found a plaintiff's inability to identify protectable elements fatal to its infringement claims. *See George S. Chen Corp. v. Cadona Inter., Inc.*, 266 Fed.Appx. 523, 524 (9th Cir. Jan. 17, 2008) (affirming summary judgment finding of non-infringement where plaintiff failed to identify any protectable elements of its "approximately true to life" dolphin and frog ornaments).

At the April 9, 2015 hearing on the instant motion, the Court invited Alpi to identify the protectable elements (or unique combination of unprotectable elements) in its designs that would allow the Court to conduct the analysis required by the Ninth Circuit. In response, Alpi noted that, for example, the coloring on its toy cow (white with black spots) is protectable because cows can come in a variety of colors (brown, black, etc.). In essence, Alpi contends that it may assert copyright protection over a depiction of an animal's natural coloring as long as not all animals of that type are uniformly colored. The Court disagrees.

Alpi's (belated) argument cannot be squared with three decades of Ninth Circuit precedent. No copyright protection can be afforded to the idea of producing toys that resemble particular animals or to *characteristics that are derived from animal physiology*.[1] *See Satava*, 323 F.3d at

---

[1] Neither party has addressed whether Alpi's toy astronaut should be treated under a different standard than its toy animals. The Court finds the same standard applies to Alpi's generic toy astronaut design as to its toy animal designs. Both the animal and astronaut works mimic the characteristics of their subjects as they exist in the real word (*e.g.,* four legs and hooves for a

4

1  810 (holding that plaintiff "may not prevent others from copying aspects of his [jellyfish]
2  sculptures resulting from . . . jellyfish physiology"); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901
3  (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed
4  dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls. . . . .
5  [A]ny similarity in expression resulting from either the physiognomy of dinosaurs or from the
6  nature of stuffed animals [is not protectable]."). Such physiological characteristics are "standard,
7  stock, or common to a particular subject matter or medium[,]" and thus, "are not protectable under
8  copyright law." *Three Boys*, 212 F.3d at 489. As the Ninth Circuit made clear in *Satava*:

> [Plaintiff] may not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts. *He may not prevent others from depicting jellyfish in bright colors, because many jellyfish are brightly colored.* He may not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically.

*Satava*, 323 F.3d at 811 (emphasis added); *see also Aliotti*, 831 F.2d at 901 n. 1 (noting that a Tyrannosaurus stuffed animal's open mouth was not an element protected by copyright because Tyrannosaurus "was a carnivore and is commonly pictured with its mouth open").

Like the jellyfish sculptures at issue in *Satava*, the features of Alpi's toys—*e.g.*, the hooves of the toy horse, the swimming motion of the toy shark, and the coloring of the toy cow—all appear to be based on the physiological characteristics of the animals they depict. Of course, Alpi necessarily made choices when designing its toys. For example, Alpi decided to extend the tail of its orca toy upward instead of downward, *see* Dkt. No. 47 at 7, and to depict its hammerhead shark toy with its mouth open instead of closed, *see id*. at 9. But these elements cannot be the basis for a copyright claim absent some showing of an original expressive contribution that removes them from the category of "standard" or "stock" characteristics. *See, e.g., Satava*, 323 F.3d at 812 (holding that the distinctive curls of the tendrils of a jellyfish sculpture may be protectable). Nor has Alpi argued that a combination of unprotectable elements in its designs amount to an original

---

horse, space suit for an astronaut). In order to qualify for copyright protection, the design must include original elements beyond the standard or stock elements of its subject. *See Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 489 (9th Cir. 2000).

work of authorship. *See id.* at 811 ("But it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection.") (emphasis in original). Instead, the shapes, bearings, colorings, and expressions of Alpi's toy animals appear to be "approximately true to life," insofar as small squeeze toys can approximate the natural world.

In sum, Alpi cannot prevent its competitors from manufacturing and selling squeezable horse toys that look like horses, squeezable shark toys that look like sharks, and squeezable bull toys that look like bulls. It has failed to identify any elements in its designs beyond the stock features that are standard to the representation of animals as small, squeezable toys. *See Dream Games of Arizona, Inc. v. PV Onsite,* 561 F.3d 983, 988 (9th Cir. 2009) ("[E]lements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea are [also] not protected."). Accordingly, Alpi has provided no evidence that any similarities between Alpi's copyrighted works and Anga's allegedly infringing designs arise from protectable elements, and that showing is necessary to support a claim of copyright infringement. *See Mattel*, 616 F.3d at 916 (noting that a finding of similarity between two works cannot "be based on similarities in unprotectable elements"); *cf. Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002) ("[I]f the [plaintiff] cannot show a triable issue of fact under the extrinsic test, [the defendants] necessarily prevail on summary judgment.").

### B. Order to Show Cause

Although the Court questions whether Alpi's designs share any protectable elements with Anga's allegedly infringing works, the Court will provide one last opportunity for Alpi to identify those protectable elements. Alpi is directed to identify—for each and every product at issue—the protectable elements shared between its designs and Anga's allegedly infringing works. For each design, Alpi must expressly list each protectable element and explain why that element is protectable or (at the very least) is part of a group of otherwise unprotectable elements that, by their selection or arrangement, are sufficient to trigger copyright protection. Alpi is further directed to include side-by-side photographs of both its designs and Anga's allegedly infringing works from the angles and with the resolution necessary to confirm that Alpi's claimed protectable elements exist.

The Court further directs Anga to provide the same briefing to the Court concerning its designs allegedly infringed by Alpi's products.[2] The Court notes that many (if not all) of these designs constitute the same type of stereotypical, "approximately true to life," depictions of animals and everyday objects that do not appear to share protectable elements with Alpi's allegedly infringing products. Accordingly, Anga must identify—for each and every product at issue—the protectable elements shared between its designs and Alpi's allegedly infringing works. Anga should also include side-by-side photographs of both its designs and Alpi's allegedly infringing works from the angles and with the resolution necessary to confirm that Anga's claimed protectable elements exist. In addition, Anga is ordered to identify in its brief what evidence creates a triable issue of fact concerning whether Alpi copied Anga's allegedly infringing works.

The parties must submit the briefs described above to the Court no later than **14 days** from the date of this Order. Each party may file a response no later than **21 days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: May 8, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[2] Anga's counterclaim in this action alleges that Alpi infringed its designs of a turtle, penguin, chicken in egg, van, orange, pear, peach, peanut, bus, gold bar, rock, steamroller, brick, concrete mixer, trash can, fire hydrant, watermelon, dollar sign, kidney, liver, stomach, lips, bone, arrow, book, vertebrae, delivery truck, bulldozer, banana, ear, diamond, lungs, tablet, humpback whale, paw, excavator, tractor, container, race car, cowboy hat, sailboat, donut, and nut and bolt. *See* Dkt. No. 37-1.