UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPI INTERNATIONAL, LTD,<br><br>    Plaintiff,<br><br>    v.<br><br>ANGA SUPPLY, LLC,<br><br>    Defendant. | Case No. 13-cv-04888-HSG<br><br>**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT AND ORDER TO SHOW CAUSE**<br><br>Re: Dkt. Nos. 44, 46, and 63 |

Plaintiff Alpi International, Ltd. ("Alpi") produces and sells soft foam and molded plastic toys known as "stress relievers." These squeezable toys come in a variety of shapes, and can be branded with corporate or other logos. Defendant Anga Supply, LLC ("Anga") is a direct competitor in the same business. Alpi alleges that 18 of Anga's products infringe its copyrighted designs. Anga has filed a counterclaim asserting that Alpi's products infringe 43 of its copyrighted designs, the rights to which Anga purportedly purchased for $80 six months after Alpi initiated this action.

Both parties moved for summary judgment. Dkt. Nos. 44 ("Alpi Mot.") and 46 ("Anga Mot."). Alpi's motion asserts that: (1) Anga cannot recover damages prior to April 28, 2014, the date it purchased its purported rights to the 43 designs it asserts in its counterclaim; (2) Anga is not entitled to attorneys' fees under 17 U.S.C. § 505 because Alpi's sales of those designs predate Anga's June 2, 2014 copyright registrations; (3) Anga cannot prove infringement for several works because Alpi's sold its designs before Anga contends they were created; and (4) Anga's counterclaim sounds in champerty. *See* Alpi Mot. Anga's motion asserts that: (1) Alpi cannot prove infringement because undisputed evidence shows that Anga's products were independently created; and (2) Alpi's asserted designs are not sufficiently similar to Anga's products to support a finding of infringement. *See* Anga Mot. The Court held a hearing on both motions on April 9,

2015.

On May 8, 2015, the Court issued an order to show cause. Dkt. No. 63 ("OSC"). As a threshold matter, the Court found that Alpi's four-page opposition failed to engage with the relevant legal standard. *Id*. at 3. Rather than identifying the shared protectable characteristics between its eighteen asserted designs and Anga's accused products, Alpi's argument on infringement consisted solely of the conclusory observation that the similarities between its bull design and Anga's bull "far outweigh[ed] any differences." Dkt. No. 58 at 2. Alpi inexplicably failed to address the other seventeen toy designs at issue in its claims. *Id*. The Court also observed that many of Anga's asserted designs—like its orange and pear toys—although not challenged by Alpi on summary judgment, appeared to constitute the very same kind of stock, scène à faire designs Anga argued did not support a finding of infringement in its summary judgment motion against Alpi. *See* Anga Mot. 4-9. In its order to show cause, the Court directed Alpi and Anga to: (1) identify the protectable elements shared between its designs and the allegedly infringing works, and (2) explain why each element is protectable or (at the very least) is part of a group of otherwise unprotectable elements that, by their selection or arrangement, are sufficient to trigger copyright protection. *See* OSC at 6. The Court further directed Anga to identify the evidence that creates a triable issue of fact concerning whether Alpi copied Anga's asserted works. *Id*. at 7.

The parties filed briefs pursuant to the Court's order to show cause on May 22, 2015, Dkt. Nos. 64 ("Alpi OSC Br.") and 66 ("Anga OSC Br."), and filed responses on May 29, 2015, Dkt. Nos. 92 ("Alpi OSC Resp.") and 91 ("Anga OSC Resp."). Neither party fully complied with the Court's order. Although the Court was explicit that the parties were to identify shared protectable traits "for each and every product at issue," Dkt. No. 63 at 6-7, Alpi performed that analysis for only seven of its asserted designs, *see* Alpi OSC Resp. at 7-19 (identifying shared protectable traits between Alpi and Anga bull, hammerhead shark, sea lion, shark, dolphin, orca, and chicken toys). Alpi's brief is silent on the existence of protectable elements in its frog, horse, astronaut, penguin, and cow designs. *See id*. Although Anga's brief nominally addressed each of its 43 asserted designs, it ignored the Court's direction to "explain why each element is protectable."

2

OSC at 7. For example, Anga's "explanation" for its donut design reads, in its entirety, "particular size and color contrast." Anga OSC Br. at 4.

The Court has reviewed the parties' submissions and the relevant case law, where provided. However, as described below, the parties have failed to meaningfully argue or support their positions with respect to much of the relief requested in their motions. Accordingly, while this Order disposes of the parties' motions for summary judgment in their entirety, the Court will not decide several of the issues raised due to the parties' failure to provide adequate briefing.

**I.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *See id*. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id*. at 254. The question is "whether a jury could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Id*. "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor." *See United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citation omitted).

The moving party must inform the district court of the basis for its motion and identify those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. *See id*. at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the

parties' differing versions at trial. *See id*.

## II. DISCUSSION

### A. Shared Protectable Elements

As the Court explained in its May 8, 2015 order to show cause, the touchstone of the copyright infringement inquiry is the identification of shared protectable elements between the copyrighted design and the allegedly infringing design. "To distinguish between permissible lifting of ideas and impermissible copying of expression, [the Ninth Circuit has] developed a two-part 'extrinsic/intrinsic' test." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)). At the initial "extrinsic" stage, the court examines the similarities between the copyrighted and challenged works, determines whether shared elements are protectable, and identifies the standard to be applied at the intrinsic stage. *Id*. "For example, ideas, scenes a faire (standard features) and unoriginal components are not protectable" and thus cannot form the basis of an infringement claim. *Id*. When the unprotectable elements are "filtered out," what remains is the author's protectable expression. *Id*.

The court then determines what standard will apply at the intrinsic stage based the breadth of possible expression. "If there's a wide range of expression . . . then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *See id*. at 913-14 (citation omitted). In contrast, subjects that permit only a narrow range of expression warrant "thin" copyright protection, whereby a challenged work must be "virtually identical" to infringe. *Id*. (citations omitted).

If the allegedly infringing work and the copyrighted work share common protectable elements, the finder of fact (usually a jury) is asked to apply the standard for infringement determined by the Court during the extrinsic stage—either substantially similar or virtually identical, respectively—at the intrinsic stage. The intrinsic inquiry "examines an ordinary person's subjective impressions of the similarities between two works, [and] is exclusively the province of the jury." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (citation omitted). However, a finding of similarity between two works "can't be

4

based on similarities in unprotectable elements." *Mattel*, 616 F.3d at 916. "When works of art share an idea, they'll often be 'similar' in the layman's sense of the term . . . . The key question always is: Are the works substantially similar beyond the fact that they depict the same idea." *Id*. at 917.

### 1.  "Thin" Copyright Protection Applies

This case concerns the parties' copyright claims over small soft foam and molded plastic squeeze toys. The designs asserted by Alpi are molded in the shapes of a variety of farm and ocean animals; the designs asserted by Anga run the gamut from a concrete mixer to a donut to a human kidney. Even a cursory perusal of the images of the parties' products confirms that the soft-foam medium places significant constraints on the possible range of expression. For example, the appendages and horns on Alpi and Anga's toy animals are uniformly more rounded and less defined than those of the real-life animals they depict. While the soft foam material allows for some grooves on the body of each animal, such as those placed on the body of Alpi and Anga's chicken to represent feathers, *see* Dkt. No. 64-7 at 2, they allow for exceptionally little detail. Eyes and nose holes are represented by black dots, *see id.*, and gills are represented by black lines or omitted completely, *see* Dkt. No. 64-2 at 2. While the soft foam or molded plastic designer is afforded some degree of choice when creating toys, those choices are severely constrained by the nature of the medium.

The subjects of the parties' designs further reduce the range of possible expression. As the Court observed in its May 8, 2015 order to show cause, "the shapes, bearings, colorings, and expressions of Alpi's toy animals appear to be 'approximately true to life,' insofar as small squeeze toys can approximate the natural world." OSC at 6. Similarly, Anga's designs largely approximate what an orange, pear, donut, shipping container, book, or fire hydrant look like in real life. The designs at issue are not fantastical. They are not exceptionally original. With the possible exception of Anga's penguin and chick toys, they are clearly not caricatures. Instead, their defining features appear to be the "standard" or "stock" characteristics that the Ninth Circuit has repeatedly held are not afforded copyright protection at all, let alone broad copyright protection. *See Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (holding that plaintiff "may

not prevent others from copying aspects of his [jellyfish] sculptures resulting from . . . jellyfish physiology"); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls. . . . . [A]ny similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals [is not protectable]."). In short, there are only so many ways that a designer can portray a relatively realistic shark, chicken, fire hydrant, or pear in the soft foam and molded plastic mediums.

In *Mattel*, the Ninth Circuit performed a similar analysis and held that relatively undetailed doll sculpts of "fashion forward" women warranted only narrow copyright protection. 616 F.3d at 915. Like the squeezable toys at issue in this case, the doll sculpt medium addressed in *Mattel* provided a limited range of possible expression. *See id.* at 908 ("A sculpt is a mannequin-like plastic doll body without skin coloring, face paint, hair or clothing."). Like Alpi here, the plaintiff in *Mattel* argued that the dolls sculpts warranted broad copyright protection because the dolls had exaggerated features that could be depicted in a variety of ways. *See id.* at 915. The Ninth Circuit disagreed. Instead, the panel observed that:

> Dolls depicting young, fashion-forward females have to have somewhat idealized proportions-which means slightly larger heads, eyes and lips; slightly smaller noses and waists; and slightly longer limbs than those that appear routinely in nature. But these features can be exaggerated only so much: Make the head too large or the waist too small and the doll becomes freakish, not idealized.

*Id*. Accordingly, the panel held that the doll sculpt form of expression was "highly constrained" and that "[b]ecause of the narrow range of expression, the preliminary sculpt is entitled to only thin copyright protection against virtually identical copying." *Id*. (citation omitted). The panel compared this limited range of expression to the detailed sketches that were also at issue in the case. *See id.* at 915-16. In contrast, designers creating a sketch:

> may vary the face paint, hair color and style, and the clothing and accessories, on top of making minor variations to the sculpt. One doll might have brown eyes with bronze eyeshadow, wavy auburn hair, leather boots, a blue plaid mini matched with a black button-down, silver knot earrings and a barrel bag. Another might have green eyes with pink eyeshadow, brown hair in a messy bun, gold wedges, dark skinny jeans matched with a purple halter, a turquoise

6

1    cuff and a clutch, along with a slightly different body and facial structure.

2    *Id*. at 916.  Based on the range of possible clothing, styling, makeup, accessories, and

3    combinations thereof, the panel found that the district court did not err in affording the doll

4    sketches broad copyright protection against substantially similar works.  *Id*.

5           The foam and plastic toys at issue in this case clearly fall on the sculpt side of the spectrum

6    and are thus entitled to only "thin" copyright protection.  Alpi's purported "protectable elements"

7    all involve slight exaggerations to the physique of its toys' real-world models.  *See, e.g.,* Alpi OSC

8    Resp. at 8 (identifying the "exaggerated upward slant" of its bull design's upper body as a

9    protectable element).  Assuming such variations warrant copyright protection at all, these are the

10   exact type of minor exaggerations that the Ninth Circuit found merit only narrow copyright

11   protection.  *See Mattel*, 616 F.3d at 915.  As with the "fashion forward" female doll sculpts at

12   issue in *Mattel*, a soft foam or plastic toy designer can only exaggerate a toy bull's features so

13   much before it no longer looks like a bull.  This is especially true where the medium provides

14   relatively little opportunity to add detail.  The rudimentary, relatively undetailed designs presented

15   in this case do not approach the range of possible expression permitted by the detailed sketches at

16   issue in *Mattel*.  Alpi's toys do not have eyelids, let alone eye shadow.

17       **2.  Alpi's Asserted Designs**

18          Anga does not, at least at this stage of the litigation, challenge the existence of some shared

19   protectable elements between Alpi's asserted designs and Anga's allegedly infringing works.

20   Anga Mot. at 6 (questioning whether, but not arguing that, the particularized expressions of Alpi's

21   designs are protected by copyright law).  Instead, Anga has moved for summary judgment on the

22   ground that, once the unprotectable elements of each toy are filtered out, its and Alpi's works are

23   not "virtually identical."  Anga Mot. at 6-9; *see, e.g., id.* at 7 (arguing that certain dissimilarities

24   between Alpi and Anga's respective chicken designs render them not virtually identical).

25          Summary judgment under the extrinsic test is "not highly favored" in copyright cases.  *See*

26   *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012) (citing *Shaw v.*

27   *Lindheim,* 919 F.2d 1353, 1355 (9th Cir. 1990)).  Summary judgment is only appropriate "if the

28   court can conclude, after viewing the evidence and drawing inferences in a manner most favorable

to the non-moving party, that no reasonable juror could find [the extrinsic test met]." *Id.* (citation omitted). "Where reasonable minds could differ on the issue . . . , however, summary judgment is improper." *Id.* (citation omitted).

Although the Court is skeptical that each of Alpi's bull, hammerhead shark, sea lion, shark, dolphin, orca, and chicken designs possesses protectable elements, the Court does not (on the evidence provided at this stage of the litigation) hold that no reasonable juror could find that Alpi and Anga's designs are virtually identical. *See L.A. Printex Indust.*, 676 F.3d at 848 ("A rational jury could find that despite some differences between Defendants' design and C30020, the similarities in the selection, coordination, and arrangement of bouquets and three-leaf branches are sufficiently substantial to support an inference of copying."). Alpi's designs are all extraordinarily similar to Anga's allegedly infringing works. The salient question for the jury (or, if appropriate, for the Court on a proper motion) will be whether those similarities arise from protectable elements or from the unprotectable elements that necessarily flow from the idea of small, animal-shaped foam and plastic squeeze toys.[1]

### B. Access to the Copyrighted Works

To prevail on a copyright infringement claim, a plaintiff must show: (1) ownership of a valid copyright; and (2) copying of the original elements of the protected work. *See Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340, 361 (1991); *Kling v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1037 (9th Cir. 2000). Absent direct evidence of copying, the second element of the claim requires a threshold fact-based showing that alleged infringer had "access" to the asserted work. . . ." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 481 (9th Cir. 2000) (citation omitted). To prove access, the party asserting infringement must show that the alleged infringer had "an opportunity to view or to copy [its] work." *Three Boys Music,* 212 F.3d at 482. To do so, it must demonstrate that there is a "reasonable possibility" or "reasonable opportunity" for the defendant to view the asserted works, not simply a "bare possibility" it did so. *Id.* A "reasonable

---

[1] However, because Alpi did not identify any protectable elements in its frog, horse, astronaut, penguin, and cow designs (despite a Court order to do so, *see* OSC at 6), the Court will grant Anga's motion for summary judgment as to those designs.

8

1    possibility" of access can be proven through circumstantial evidence "in one of two ways: (1) a
2    particular chain of events is established between the plaintiff's work and the defendant's access to
3    that work . . . , or (2) the plaintiff's work has been widely disseminated." *Id*.

4    However, even where evidence of access is lacking, a "striking similarity" between the
5    works may give rise to a permissible inference of copying. *Id.* at 485 ("in the absence of any
6    proof of access, a copyright plaintiff can still make out a case of infringement by showing that the
7    songs were 'strikingly similar'"). However, striking similarity is a high bar. "At base, 'striking
8    similarity' simply means that, in human experience, it is virtually impossible that the two works
9    could have been independently created." 4 Melville B. Nimmer & David Nimmer, *Nimmer on
10   Copyright* § 13.02[B] (2005). That is, "[t]o show a striking similarity between works, a plaintiff
11   must produce evidence that the accused work *could not possibly* have been the result of
12   independent creation." *Seals-McClellan v. Dreamworks, Inc.*, 120 Fed.Appx. 3, 4 (9th Cir. 2004)
13   (emphasis in original) (citation omitted).

14   In this case, Anga concedes that it has no direct or circumstantial evidence that Alpi had
15   access it is asserted designs. *See* Anga OSC Br. at 7-8. Alpi has submitted some circumstantial
16   evidence that Anga had access, *see* Dkt. No. 93, but it did so through a declaration that: (1)
17   accompanied its opposition to Anga's response to the Court's order to show cause, well after its
18   deadline to file an opposition to Anga's motion for summary judgment, where Alpi was obligated
19   to submit such facts; and (2) relies in large part on inadmissible hearsay. Accordingly, for
20   purposes of this motion, the Court does not consider any evidence submitted by the parties.
21   However, because all of the asserted and allegedly infringing works are so similar, the Court does
22   not, at this time, exclude the possibility that a jury could find the works "strikingly similar" and
23   thus create a permissible inference of copying even without evidence of access.

24       **C.**    **Alpi's Prior Use of its Allegedly Infringing Products**

25   Alpi argues that at least some of Anga's infringement claims must fail because Alpi sold
26   several of its allegedly infringing designs before Anga alleges it created them. *See* Alpi Mot. at 5-
27   6. In support of its argument, Alpi submitted excerpts from catalogues it created in the 1990's and
28   early 2000's. *See* Dkt. No. 45-3. However, the resolution of the images submitted to the Court is

9

so poor that the Court cannot rule at this time—as a matter of law—that the squeeze toys represented in those exhibits are exactly the same as those alleged to infringe in this case. Accordingly, the question of whether Alpi's allegedly infringing works actually predate the works that they are alleged to infringe will not be decided on summary judgment.

### D. Availability of Pre-Purchase Damages

Alpi argues that Anga is not entitled to damages prior to April 28, 2014 (the date of its purchase of the copyrights at issue in its counterclaim), because the assignment conveying its interests in those copyrights did not include an express assignment of causes of actions that accrued prior to the date of assignment. Alpi Mot. at 3-4. Anga responds that the case law upon which Alpi bases its motion applies only to patents, and that no authority supports Alpi's position with respect to copyrights. *See* Dkt. No. 53 ("Alpi Opp.") at 1-2.

The Court finds that neither party has sufficiently briefed the issue. Alpi cites seemingly dispositive language in the Ninth Circuit's decision in *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 42 (9th Cir. 1933), without informing the Court that the relevant language appears in Judge McCormick's dissent, not the majority opinion. Neither party references any other decisions from this Circuit. Accordingly, the Court will defer this question and instruct the parties to provide additional briefing should the question of pre-assignment damages become a salient issue in this litigation.

### E. Attorney's Fees

Alpi moves for summary judgment on Anga's counterclaim for attorney's fees pursuant to 17 U.S.C. § 505 on the ground that the copyrights asserted by Anga were all registered years after Alpi's accused products were brought to market. *See* Alpi Mot. at 4. Anga does not dispute that, to the extent Alpi's products infringe, that infringement commenced years before it registered its copyrights. Anga Opp. at 2-3. Instead, Anga contends that a plaintiff may be entitled to attorney's fees if the defendant's "infringing activities continue after the registration of the copyrighted work." Anga Opp. at 3. Anga cites no authority for its "continued infringement" theory, which is inconsistent with governing Ninth Circuit authority. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008) (holding that "*the first act of infringement*

in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412.") (emphasis in original).  Accordingly, the Court holds that Anga may not recover attorney's fees related to its counterclaim.

### F. Champerty

Alpi moves for summary judgment on Anga's counterclaim on the basis that it arises in champerty.  Alpi Mot. at 6-7; *see also* Champerty, Black's Law Dictionary (10th ed. 2014) ("An agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds."). Alpi cites a single Missouri appellate decision—which addresses a very different factual situation and applies Missouri law—in support of its argument.  Mot. at 6 (citing *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co*., 931 S.W.2d 166 (Mo. Ct. App. 1996)).  In other words, Alpi has failed to support its position with any relevant legal authority.  The Court cannot decide this issue on the briefing provided by Alpi.

### III. CONCLUSION

For the foregoing reasons, Anga's motion for summary judgment is **DENIED** with respect to Alpi's claims arising from its bull, hammerhead shark, sea lion, shark, dolphin, orca, and chicken designs, and **GRANTED** with respect to the claims arising from Alpi's frog, horse, astronaut, penguin, and cow designs.  Alpi's motion for summary judgment is **DENIED** in all respects with the exception of its argument concerning the availability of attorneys' fees related to Anga's counterclaim.  On that limited ground, Alpi's motion is **GRANTED**.

The parties are **ORDERED** to appear before the undersigned at a Case Management Conference at 2 p.m. on August 18, 2015 in Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco.

**IT IS SO ORDERED.**

Dated: 8/5/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge

11